UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

|  |  |
|---|---|
| ) | |
| ) | |
| ) | Master File No. 2: 11-md-2226-DCR |
| IN RE: DARVOCET, DARVON AND ) | MDL Docket No. 2226 |
| PROPOXYPHENE PRODUCTS ) | |
| LIABILITY LITIGATION ) | |
| ) | |
| *Alix, et al., v. Eli Lilly and Company, et al.,* ) | Civil Action No. 2: 11-182-DCR |
| *Trimboli, et al. v. Xanodyne Pharm., et al.,* ) | Civil Action No. 2: 11-189-DCR |
| *Eldredge v. Xanodyne Pharm., et al.,* ) | Civil Action No. 2: 11-190-DCR |
| *Labit v. Xanodyne Pharm., et al.,* ) | Civil Action No. 2: 11-296-DCR |
| *Balben v. Xanodyne Pharm., et al.,* ) | Civil Action No. 2: 11-297-DCR |
| *Forrest v. Xanodyne Pharm., et al.,* ) | Civil Action No. 2: 11-298-DCR |
| *Noel v. Xanodyne Pharm., et al.,* ) | Civil Action No. 2: 11-299-DCR |
| *Green v. Xanodyne Pharm., et al.,* ) | Civil Action No. 2: 11-300-DCR |
| *Wheeler v. Xanodyne Pharm., et al.* ) | Civil Action No. 2: 11-301-DCR |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT ENDO PHARMACEUTICALS HOLDINGS INC.'S
AND DEFENDANT ENDO PHARMACEUTICALS INC.'S
MOTIONS TO DISMISS**

This matter is pending for consideration of the motion to dismiss filed by Defendants

Endo Pharmaceuticals Holdings Inc. and Endo Pharmaceuticals Inc. (jointly referred to hereafter

as "the Endo Defendants").[1]   In these nine cases, the motion is based upon two primary

_____

[1]  The Endo Defendants filed this motion in twenty-three cases.  [MDL Record No. 466]
However, in fourteen of those cases, they also moved the Court to dismiss the claims asserted
against them based upon lack of personal jurisdiction.  Because personal jurisdiction is a threshold
matter, the Endo Defendants' motion will be addressed separately with respect to the remaining
fourteen cases.

arguments.  First, the Endo Defendants argue that the claims asserted against them should be dismissed because they have never made or sold propoxyphene products and cannot be held liable for the acts of their subsidiaries that did.  They rely on the well-established rule that generally, "a parent corporation . . . is not liable for the acts of its subsidiaries."  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  The Endo Defendants further contend that the claims asserted against them as "generic manufacturers" are preempted under *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011).

The plaintiffs do not seriously contest the Endo Defendants' assertion that they did not actually manufacture or sell propoxyphene products.  Instead, they assert that there are unresolved factual issues concerning these defendants' acquisition of, and relationship to, certain subsidiary companies acquired shortly after propoxyphene products were removed from the market.  According to the plaintiffs, the Endo Defendants *might* be liable for the actions of the subsidiaries under one of four exceptions to the general rule of non-liability relied upon by the defendants.[2]  They argue that dismissal is not appropriate because discovery is needed under

---

[2]  According to the plaintiffs, the first exception applies when a successor corporation expressly or impliedly agrees to assume the debts and liabilities of a predecessor corporation. They concede, however, that "the business entities are wholly owned subsidiaries of the Endo Defendants" and that they "continue to operate on a daily basis."  [Record No. 901, p. 7]  As a result, the plaintiffs cannot assert claims for successor liability under the undisputed facts of this case. "Successor liability enables claimants to seek recourse from the successor that has replaced or entirely taken over the original entity."  *In re Welding Fume Prods. Liab. Litig.,* No. 1: 03-CV-17000, 2010 WL 2403355, at *7 (N.D. Ohio June 11, 2010).  Where, as here, the original entity still exists, there is no successor and thus no successor liability.  *Id.*

The next exception that might apply involves corporate mergers.  And under the third exception advanced by the plaintiffs, a purchaser may be liable if it merely continues the seller's business.  Finally, the plaintiffs contend that a purchaser may be liable if it is demonstrated that the transaction constitutes a fraudulent attempt to escape liability rather than a legitimate transfer of

each of these theories.  Additionally, the plaintiffs contend that the claims asserted in this action are not preempted under *Mensing*.  [Record No. 901]

As discussed below, discovery is not needed to allow the plaintiffs to develop arguments concerning any parent-subsidiary relationship or theory of derivative liability.  The Court determined previously that the claims asserted in these cases against generic manufacturers of propoxyphene products are completely preempted by the Supreme Court's holding in *Mensing*. Because their subsidiary corporations that manufactured generic propoxyphene products are not liable under *Mensing*, the Endo Defendants may not be held liable for actions taken by those subsidiaries.

# I.

On March 5 and 7, 2012, the Court resolved several motions to dismiss in three separate Memorandum Opinions and Orders.  [Record Nos. 1274, 1305, and 1402]  In the first opinion, the Court addressed Defendant Xanodyne Pharmaceuticals, Inc.'s arguments that it could not be liable to plaintiffs who failed to establish that they ingested a product that it sold, manufactured, or distributed.  After considering the defendant's arguments as well as the plaintiffs' response and the products-liability law from several states, the Court concluded that dismissal of the claims asserted against Xanodyne in thirty-five cases was appropriate.  As indicated in this first opinion,

> [n]ot one of the plaintiffs in these cases has properly identified Xanodyne as the entity that marketed, sold, or manufactured the product he or she ingested. . . . In light of the requirement that, in order to hold a defendant liable, a plaintiff must prove the defendant was responsible for the allegedly defective product, [the

assets.  [Record No. 901, pp. 6-8]

plaintiffs'] allegations do not "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." . . .  Therefore, the product liability claims against Xanodyne in each of these cases fail as a matter of law.

[Record No. 1274, pp. 6-7 (second alteration in original) (citations, footnotes, and references to the record omitted)][3]  The allegations in the nine cases currently under consideration suffer from some of the same pleading deficiencies.  Additionally, as previously noted, the plaintiffs do not now contend that the Endo Defendants actually manufactured or sold products containing propoxyphene.  Rather, they assert that related companies were involved in manufacturing and selling generic products containing propoxyphene and that the Endo Defendants have liability resulting from the actions of those related companies.

     That argument is foreclosed by the Court's second opinion, which addressed a joint motion to dismiss filed in thirty-four cases on behalf of several defendants alleged to be generic manufacturers of propoxyphene products (*i.e.*, Defendants Brenn Distribution, Inc.; Brenn Manufacturing, Inc.; Covidien, Inc.; Generics Bidco I, LLC; Generics Bidco II, LLC; Generics International (US Parent), Inc.; Generics International (US), Inc.; Mallinckrodt Holdings, LLC; Mallinckrodt, Inc.; Mylan Pharmaceuticals, Inc.; Mylan, Inc.; Propst Distribution, Inc.; Qualitest Pharmaceuticals, Inc.; Teva Biopharmaceuticals USA, Inc.; Teva Pharmaceuticals USA, Inc.; Vintage Pharmaceuticals, Inc.; Vintage Pharmaceuticals, LLC; Watson Pharmaceuticals (New Jersey), Inc.; and Watson Pharmaceuticals, Inc. (collectively, "the Generic Defendants")).

_____

[3] The Court addressed the plaintiffs' misrepresentation theory of liability at pages 8-14 of this initial opinion and concluded, in part, that a plaintiff must properly identify the entity responsible for the product at issue to proceed with such a claim.  Further, the Court held that Xanodyne had no legal duty toward consumers of generic products containing propoxyphene. [Record No. 1274]

[Record No. 1305]  The Generic Defendants argued that the claims asserted against them should be dismissed because, under *Mensing*, the claims were completely preempted.  In granting the Generic Defendants' motion, the Court rejected the plaintiffs' arguments that *Mensing* was not applicable because of the manner in which they characterized their claims.  As explained in that opinion, "no matter how [the plaintiffs] frame their allegations, [they] cannot avoid *Mensing*'s effect."  [Record No. 1305, p. 4]  Thus, the claims asserted against the Generic Defendants — including those the plaintiffs claim are liable as subsidiaries or related entities of the Endo Defendants — were dismissed with prejudice.[4]

## II.

The plaintiffs' memorandum filed in opposition to the Endo Defendants' motion to dismiss in the instant cases was submitted prior to the Court's ruling on the Generic Defendants' joint motion.  In their opposing memo, the plaintiffs make the same arguments regarding the inapplicability of *Mensing* that the Court rejected in its second opinion filed on March 5, 2012.  [Record No. 1305]  Additionally, the plaintiffs argue that dismissal of the claims asserted against the Endo Defendants is not appropriate at this time because factual issues remain regarding these defendants' ownership of several subsidiaries with potential liability for the manufacture, sale, or distribution of propoxyphene products.  [Record No. 901]  However, as noted above, the

---

[4]  On March 7, 2012, the Court addressed Defendant Eli Lilly and Company's  motion to dismiss and motion for judgment on the pleadings filed in twenty-one cases.  [Record No. 1402] After outlining Lilly's involvement and history involving propoxyphene products as well as its 2002 divestiture to NeoSan, the Court concluded that "the plaintiffs' complaints do not set forth sufficient facts to allege that the plaintiffs ingested a product sold by Lilly before its divestiture."  [*Id.*, p. 9] Further, "[t]he plaintiffs . . . failed to state a plausible claim against Lilly as a manufacturer of brand-name drugs after 2002."  [*Id.*, p. 14]  Finally, the plaintiffs' remaining fraud and misrepresentation claims were also dismissed.  [*Id.*, pp. 16-18]

Court has already determined that the subsidiaries in issue (Generics International (US Parent), Inc.; Vintage Pharmaceuticals, LLC; Generics Bidco I, LLC; and Generics Bidco II, LLC) are not liable under the Supreme Court's holding in *Mensing*. Thus, even if a parent-subsidiary relationship were established between the Endo Defendants and one or more manufacturers of generic propoxyphene products ingested by the plaintiffs, the Endo Defendants would still be entitled to dismissal because any liability they might have for the acts of their subsidiaries would be derivative.[5] In short, these defendants cannot acquire liability from a subsidiary where the claims asserted against the subsidiary are preempted.

### III.

For the reasons outlined above and in this Court's Memorandum Opinions and Orders entered March 5, 2012, and March 7, 2012 [Record Nos. 1274, 1305, and 1402], it is hereby

**ORDERED** that the motions to dismiss for failure to state a claim filed by Defendant Endo Pharmaceuticals Holdings Inc. and Defendant Endo Pharmaceuticals Inc. in the following cases are **GRANTED**: Civil Action No. 2: 11-182-DCR; Civil Action No. 2: 11-189-DCR; Civil Action No. 2: 11-190-DCR; Civil Action No. 2: 11-296-DCR; Civil Action No. 2: 11-297-DCR; Civil Action No. 2: 11-298-DCR; Civil Action No. 2: 11-299-DCR; Civil Action No. 2: 11-300-DCR; and Civil Action No. 2: 11-301-DCR. The claims asserted against Defendant Endo Pharmaceuticals Holdings Inc. and Defendant Endo Pharmaceuticals Inc. in these nine actions are **DISMISSED**, with prejudice.

---

[5] The record reflects that the Endo Defendants indirectly acquired Vintage LLC, Generics Bidco I, LLC, and Generics Bidco II, LLC on November 30, 2010, or approximately 11 days after the market withdrawal of medications containing propoxyphene.

This 4th day of April, 2012.



Signed By:

*Danny C. Reeves*  DCR

**United States District Judge**